## IN THE CIRCUIT COURT OF ASHLEY COUNTY, ARKANSAS
_____ DIVISION

DELOIS PIPPEN, as Special Administratrix of
the Estate of Lucille G. Billings, deceased, and
on behalf of the wrongful death beneficiaries
of Lucille G. Billings; and
On Behalf of All Others Similarly Situated

**PLAINTIFF**

vs.                                   CASE NO. 16 - 022 - 4

PINEWOOD HEALTH AND REHABILITATION, LLC;      **DEFENDANT**
Arkansas SNF Operations Acquisition, LLC;
Arkansas Nursing Home Acquisition, LLC;
CSCV Holdings, LLC; Capital Funding Group, Inc.;
SLC Professionals, LLC; SLC Professionals AR7, LLC;
SLC Professionals Holdings, LLC; SLC Operations Holdings, LLC;
SLC Operations, LLC; SLC Administrative Services of Arkansas, LLC;
Senior Living Communities of Arkansas, LLC; Addit, LLC;
SLC Operations Master Tenant, LLC; SLC Properties, LLC;
1101 Waterwell Road, LLC; CSCV Arkansas Realty, LLC;
Alan Zuccari; Brian Reynolds; John W. Dwyer; Daniel Baird;
Troy Morris, in his capacity as Administrator of
Pinewood Health and Rehabilitation, LLC;
Emily Greene, in her capacity as Administrator of
Pinewood Health and Rehabilitation, LLC;
Carol Hoelscher, in her capacity as Administrator of
Pinewood Health and Rehabilitation, LLC; and
Barney L. Pierce, in his capacity as Administrator of
Pinewood Health and Rehabilitation, LLC

FILED FOR RECORD
Ashley County, Arkansas
at 2:00 o'clock P m

FEB 03 2016

VICKIE STELL, CIRCUIT CLERK
By _____ DC

## CLASS ACTION COMPLAINT

COMES NOW, the Plaintiff, Delois Pippen, as Special Administratrix of the Estate of

Lucille G. Billings and on behalf of herself and all others similarly situated, by and through her

attorneys, Reddick Moss, PLLC, and for her causes of action against the Defendants, state as

follows:

### INTRODUCTION

1.      The class claims of this Complaint are that the Defendants acted in concert and/or

as part of a joint enterprise to chronically understaff Pinewood Health and Rehabilitation, LLC

so as to breach the residents' statutory and contractual rights and unjustly enrich the Defendants.

This complaint includes a request that a class be certified consisting of all Arkansas citizens who were residents of Pinewood Health and Rehabilitation, LLC and the estates of Arkansas citizens who resided at Pinewood Health and Rehabilitation, LLC ("Pinewood Health and Rehabilitation," also sometimes referred to simply as the "Facility") from September 1, 2011 through December 1, 2015, as well as a prayer for compensatory, economic and punitive damages, attorneys' fees, interest, and costs. Plaintiff, Delois Pippen, as Special Administratrix of the Estate of Lucille Billings, and on behalf of the wrongful death beneficiaries of Lucille Billings, brings this action on behalf of the Estate of Lucille Billings for, among other things, negligence and wrongful death. Like the other proposed Plaintiff Class members, she also brings class claims as described below:

## PARTIES

2.     Delois Pippen, an Arkansas citizen, is Lucille Billings' daughter and the Special Administratrix of her Estate pursuant to an Order of the Ashley County Circuit Court, Probate Division, Case No. PR-2015-44-3, a copy of which is attached hereto as **Exhibit A**.

3.     Lucille Billings was a resident of Pinewood Health and Rehabilitation, a nursing home located at 1101 Waterwell Road, Crossett, Ashley County, Arkansas, from February 15, 2013 until March 5, 2013, from October 24, 2013 until October 29, 2013, and from December 12, 2014 until her death on January 3, 2015.

4.     Defendant Pinewood Health and Rehabilitation, LLC is a limited liability company organized under the laws of the State of Arkansas and authorized to do business in the State of Arkansas and, during all times pertinent to this lawsuit, was engaged in the business of operating, managing, owning, controlling, providing services for, and holding the license for the nursing home Pinewood Health and Rehabilitation. The causes of action made the basis of this complaint arise out of such business conducted by Pinewood Health and Rehabilitation, LLC in

2

the operation, management, ownership, control, provision of services, and licensing of the Facility during the residency of Lucille Billings and during the class period. Nursing homes in the State of Arkansas must be licensed by the Office of Long Term Care in order to operate. Ark. Code Ann. § 20-10-224(a). As the holder of the license to operate the Facility, Pinewood Health and Rehabilitation, LLC is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. Pinewood Health and Rehabilitation, LLC's principal place of business is 1101 Waterwell Road, Crossett, Arkansas 71635. The agent for service of process for Pinewood Health and Rehabilitation, LLC is TRAC-The Registered Agent Company, 300 S. Spring Street, Suite 900, Little Rock, Arkansas 72201.

5.     Defendant Arkansas SNF Operations Acquisition, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. Arkansas SNF Operations Acquisition, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by Arkansas SNF Operations Acquisition, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, Arkansas SNF Operations Acquisition, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.   The agent for service of process for Arkansas SNF Operations Acquisition, LLC is TRAC-The Registered Agent Company, 800 North State Street, Suite 402, Dover, Delaware 19901.

6.     Defendant Arkansas Nursing Home Acquisition, LLC is a foreign limited liability company organized and existing under the laws of the State of Virginia. Arkansas Nursing Home Acquisition, LLC was engaged in business in the State of Arkansas and operated, managed,

3

owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by Arkansas Nursing Home Acquisition, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, Arkansas Nursing Home Acquisition, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Arkansas Nursing Home Acquisition, LLC is Gentry Locke Rakes & Moore LLP, 10 Franklin Road SE, 800 Suntrust Plz, P.O. Box 40013, Roanoke, Virginia 24022.

7.    Defendant CSCV Holdings, LLC is a foreign limited liability company organized and existing under the laws of the State of Maryland. CSCV Holdings, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by CSCV Holdings, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, CSCV Holdings, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for CSCV Holdings, LLC is HIQ Maryland Corporation, 715 St. Paul St., Baltimore, Maryland 21202.

8.    Defendant Capital Funding Group, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware. Capital Funding Group, Inc. was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of

4

Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by Capital Funding Group, Inc. in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, Capital Funding Group, Inc. was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Capital Funding Group, Inc. is The Company Corporation, 2711 Centerville Rd., Ste. 400, Wilmington, Delaware 19808.

9.      Defendant SLC Professionals, LLC f/k/a SLC Professionals of Arkansas, LLC is a limited liability company organized under the laws of the State of Arkansas and authorized to do business in the State of Arkansas and, during all times pertinent to this lawsuit, was engaged in the business of operating, managing, owning, controlling, and/or providing services for the nursing home Pinewood Health and Rehabilitation. The causes of action made the basis of this complaint arise out of such business conducted by SLC Professionals, LLC in the operation, management, ownership, control, and/or provision of services for the Facility during the residency of Lucille Billings and during the class period. SLC Professionals, LLC provided clinical consulting services for the Facility and was directly involved in overseeing, supervising, influencing, and directing the day-to-day and clinical care provided to Lucille Billings and other residents of the Facility. Accordingly, SLC Professionals, LLC is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. At all times material to this action, SLC Professionals, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.  The agent for service of process for SLC Professionals, LLC is TRAC-The Registered Agent Company, 300 S. Spring Street, Suite 900, Little Rock, Arkansas 72201.

10.    Defendant SLC Professionals AR7, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Professionals AR7, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Professionals AR7, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, SLC Professionals AR7, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.    The agent for service of process for SLC Professionals AR7, LLC is TRAC-The Registered Agent Company, 800 North State Street, Suite 402, Dover, Delaware, 19901.

11.    Defendant SLC Professionals Holdings, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Professionals Holdings, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Professionals Holdings, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, SLC Professionals Holdings, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.    The agent for service of process for SLC Professionals Holdings, LLC is TRAC-The Registered Agent Company, 800 North State Street, Suite 402, Dover, Delaware, 19901.

6

12.    Defendant SLC Operations Holdings, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Operations Holdings, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Operations Holdings, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, SLC Operations Holdings, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.   The agent for service of process for SLC Operations Holdings, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

13.    Defendant SLC Operations, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Operations, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Operations, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, SLC Operations, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages.   The agent for service of process for SLC Operations, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

14.    Defendant SLC Administrative Services of Arkansas, LLC is a limited liability company organized under the laws of the State of Arkansas and authorized to do business in the

7

State of Arkansas and, during all times pertinent to this lawsuit, was engaged in the business of operating, managing, owning, controlling, and/or providing services for the nursing home Pinewood Health and Rehabilitation. The causes of action made the basis of this complaint arise out of such business conducted by SLC Administrative Services of Arkansas, LLC in the operation, management, ownership, control, and/or provision of services for the Facility during the residency of Lucille Billings and during the class period. SLC Administrative Services of Arkansas, LLC provided clinical and/or budgetary consulting and services for the Facility and was directly involved in overseeing, supervising, influencing, and directing the day-to-day operations of the Facility and directly influencing the staffing levels at the facility through budgetary and financial constraints. Accordingly, SLC Administrative Services of Arkansas, LLC is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. At all times material to this action, SLC Administrative Services of Arkansas, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for SLC Administrative Services of Arkansas, LLC is Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, Arkansas 72201.

15.     Defendant Senior Living Communities of Arkansas, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. Senior Living Communities of Arkansas, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by Senior Living Communities of Arkansas, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, Senior Living

8

Communities of Arkansas, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Senior Living Communities of Arkansas, LLC is Corporate Service Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

16. Defendant Addit, LLC is a foreign limited liability company organized and existing under the laws of the State of Indiana. Addit, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by Addit, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, Addit, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for Addit, LLC is TRAC-The Registered Agent Company, 3310 Busy Bee Ln., Indianapolis, Indiana 46227.

17. Defendant SLC Operations Master Tenant, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Operations Master Tenant, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Operations Master Tenant, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action SLC Operations Master Tenant, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for SLC Operations

9

Master Tenant, LLC is TRAC-The Registered Agent Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

18.    Defendant SLC Properties, LLC is a foreign limited liability company organized and existing under the laws of the State of Delaware. SLC Properties, LLC was engaged in business in the State of Arkansas and operated, managed, owned, controlled, and/or provided services for the nursing home Pinewood Health and Rehabilitation during the residency of Lucille Billings and during the class period. The causes of action made the basis of this complaint arise out of such business conducted by SLC Properties, LLC in the operation, management, ownership, control, and/or provision of services for the Facility. At all times material to this action, SLC Properties, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for SLC Properties, LLC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

19.    Defendant 1101 Waterwell Road, LLC is a limited liability company organized under the laws of the State of Arkansas and authorized to do business in the State of Arkansas and, during all times pertinent to this lawsuit, was engaged in the business of operating, managing, owning, controlling, and/or providing services for the nursing home Pinewood Health and Rehabilitation. The causes of action made the basis of this complaint arise out of such business conducted by 1101 Waterwell Road, LLC in the operation, management, ownership, control, and/or provision of services for the Facility during the residency of Lucille Billings and during the class period. 1101 Waterwell Road, LLC controlled either directly or indirectly virtually all of the property, both tangible and intangible, necessary to operate the Facility and, therefore, directly influenced the operating and living conditions at the Facility. Accordingly, 1101 Waterwell Road, LLC is a defendant whose conduct forms a significant basis of the claims

10

asserted herein and from whom significant relief is sought. At all times material to this action, 1101 Waterwell Road, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for 1101 Waterwell Road, LLC is The Corporation Company, 124 West Capitol Ave, Suite 1900, Little Rock, AR 72201.

20.     Defendant CSCV Arkansas Realty, LLC is a limited liability company organized under the laws of the State of Arkansas and authorized to do business in the State of Arkansas and, during all times pertinent to this lawsuit, was engaged in the business of operating, managing, owning, controlling, and/or providing services for the nursing home Pinewood Health and Rehabilitation. The causes of action made the basis of this complaint arise out of such business conducted by CSCV Arkansas Realty, LLC in the operation, management, ownership, control, and/or provision of services for the Facility during the residency of Lucille Billings and during the class period. CSCV Arkansas Realty, LLC controlled either directly or indirectly virtually all of the property, both tangible and intangible, necessary to operate the Facility and, therefore, directly influenced the operating and living conditions at the Facility. Accordingly, CSCV Arkansas Realty, LLC is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. At all times material to this action, CSCV Arkansas Realty, LLC was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiffs' damages. The agent for service of process for CSCV Arkansas Realty, LLC is TRAC-The Registered Agent Company, 300 South Spring Street, Suite 900, Little Rock, Arkansas 72201.

21.     Defendant Alan Zuccari, an individual whose address is 7712 Carlton Place, McLean, Virginia 22102, owned Pinewood Health and Rehabilitation, LLC and controlled the Facility's operation, management, and policies and procedures. Upon information and belief,

Alan Zuccari owns 100% of Defendant Arkansas Nursing Home Acquisition, LLC, which owns 49% of Defendant Arkansas SNF Operations Acquisition, LLC, which owns 100% of Pinewood Health and Rehabilitation, LLC. The causes of action made the basis of this complaint arise out of the conduct of Alan Zuccari in the operation, management, control, and development and implementation of policies and procedures for the Facility during the residency of Lucille Billings and during the class period. Defendant Alan Zuccari also operated, managed, and controlled the other corporate Defendants named herein. At all times material to this action, Alan Zuccari was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.

22.     Defendant Brian Reynolds, an individual whose address is 1422 Clarkview Road, Baltimore, Maryland, 21209 owned Pinewood Health and Rehabilitation, LLC and controlled the Facility's operation, management, and policies and procedures. Upon information and belief, Brian Reynolds owns 10% of Defendant CSCV Holdings, LLC, which owns 51% of Defendant Arkansas SNF Operations Acquisition, LLC, which owns 100% of Pinewood Health and Rehabilitation, LLC. The causes of action made the basis of this complaint arise out of the conduct of Brian Reynolds in the operation, management, control, and development and implementation of policies and procedures for the Facility during the residency of Lucille Billings and during the class period. Defendant Brian Reynolds also operated, managed, and controlled the other corporate Defendants named herein. At all times material to this action, Brian Reynolds was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.

23.     Defendant John W. Dwyer an individual whose address is 405 Atlantic Street, Melbourne, Florida 32951 owned Pinewood Health and Rehabilitation, LLC and controlled the Facility's operation, management, and policies and procedures. Upon information and belief,

12

John W. Dwyer, either individually or through a trust under his direct control, owns 100% of Defendant Capital Funding Group, Inc., which owns 90% of Defendant CSCV Holdings, LLC, which owns 51% of Defendant Arkansas SNF Operations Acquisition, LLC, which owns 100% of Pinewood Health and Rehabilitation, LLC. The causes of action made the basis of this complaint arise out of the conduct of John W. Dwyer in the operation, management, control, and development and implementation of policies and procedures for the Facility during the residency of Lucille Billings and during the class period. Defendant John W. Dwyer also operated, managed, and controlled the other corporate Defendants named herein. At all times material to this action, John W. Dwyer was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.

24.     Defendant Daniel Baird, an individual whose address is 1422 Clarkview Road, Baltimore, Maryland, 21209 owned Pinewood Health and Rehabilitation, LLC and controlled the Facility's operation, management, and policies and procedures. Upon information and belief, Daniel Baird was a manager of Defendant Pinewood Health and Rehabilitation, LLC, and the causes of action made the basis of this complaint arise out of the conduct of Daniel Baird in the operation, management, control, and development and implementation of policies and procedures for the Facility during the residency of Lucille Billings and during the class period. Defendant Daniel Baird also operated, managed, and controlled the other corporate Defendants named herein. At all times material to this action, Daniel Baird was a control person as defined in Ark. Code Ann. § 4-88-113(d)(1) and is therefore jointly and severally liable for the Plaintiff's damages.

25.     Upon information and belief, Defendant Troy Morris was an Administrator of Pinewood Health and Rehabilitation during the residency of Lucille Billings and/or during the class period. Arkansas nursing homes are required to be under the administrative direction and

13

charge of a licensed nursing home administrator. Ark. Code Ann. § 20-10-1203(1). Administrators are charged by law with responsibility for the management of nursing homes. 42 C.F.R. § 483.75. Troy Morris, as an Administrator of Pinewood Health and Rehabilitation, directed the overall, day-to-day operations of the facility and was supposed to ensure compliance with government regulations and facility policies, including staffing regulations and policies. Troy Morris, as an Administrator of Pinewood Health and Rehabilitation, also monitored the quality of care being provided in the Facility, was responsible for the Facility's budgetary performance, was responsible for ensuring adequate staffing at the Facility, and also developed and implemented marketing programs to attract residents or their responsible parties to the Facility. Accordingly, Troy Morris is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. The causes of action made the basis of this complaint arise out of the conduct of Troy Morris's administration of the Facility. Troy Morris is an Arkansas citizen and may be served with process at his last known address: 229 Perla Road, Malvern, Arkansas 72104.

26.     Upon information and belief, Defendant Emily Greene was an Administrator of Pinewood Health and Rehabilitation during the residency of Lucille Billings and/or during the class period. Arkansas nursing homes are required to be under the administrative direction and charge of a licensed nursing home administrator. Ark. Code Ann. § 20-10-1203(1). Administrators are charged by law with responsibility for the management of nursing homes. 42 C.F.R. § 483.75. Emily Greene, as an Administrator of Pinewood Health and Rehabilitation, directed the overall, day-to-day operations of the facility and was supposed to ensure compliance with government regulations and facility policies, including staffing regulations and policies. Emily Greene, as an Administrator of Pinewood Health and Rehabilitation, also monitored the quality of care being provided in the Facility, was responsible for the Facility's budgetary

14

performance, was responsible for ensuring adequate staffing at the Facility, and also developed and implemented marketing programs to attract residents or their responsible parties to the Facility. Accordingly, Emily Greene is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. The causes of action made the basis of this complaint arise out of the conduct of Emily Greene's administration of the Facility. Emily Greene is an Arkansas citizen and may be served with process at her last known address: 1038 Ashley 17, Hamburg, Arkansas 71646.

27.     Upon information and belief, Defendant Carol Hoelscher was an Administrator of Pinewood Health and Rehabilitation during the residency of Lucille Billings and/or during the class period. Arkansas nursing homes are required to be under the administrative direction and charge of a licensed nursing home administrator. Ark. Code Ann. § 20-10-1203(1). Administrators are charged by law with responsibility for the management of nursing homes. 42 C.F.R. § 483.75. Carol Hoelscher, as an Administrator of Pinewood Health and Rehabilitation, directed the overall, day-to-day operations of the facility and was supposed to ensure compliance with government regulations and facility policies, including staffing regulations and policies. Carol Hoelscher, as an Administrator of Pinewood Health and Rehabilitation, also monitored the quality of care being provided in the Facility, was responsible for the Facility's budgetary performance, was responsible for ensuring adequate staffing at the Facility, and also developed and implemented marketing programs to attract residents or their responsible parties to the Facility. Accordingly, Carol Hoelscher is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. The causes of action made the basis of this complaint arise out of the conduct of Carol Hoelscher's administration of the Facility. Carol Hoelscher is an Arkansas citizen and may be served with process at her last known address: 8908 Gracie Lane, Fort Smith, Arkansas 72916.

15

28.     Upon information and belief, Defendant Barney L. Pierce was an Administrator of Pinewood Health and Rehabilitation during the residency of Lucille Billings and/or during the class period. Arkansas nursing homes are required to be under the administrative direction and charge of a licensed nursing home administrator. Ark. Code Ann. § 20-10-1203(1). Administrators are charged by law with responsibility for the management of nursing homes. 42 C.F.R. § 483.75. Barney L. Pierce, as an Administrator of Pinewood Health and Rehabilitation, directed the overall, day-to-day operations of the facility and was supposed to ensure compliance with government regulations and facility policies, including staffing regulations and policies. Barney L. Pierce, as an Administrator of Pinewood Health and Rehabilitation, also monitored the quality of care being provided in the Facility, was responsible for the Facility's budgetary performance, was responsible for ensuring adequate staffing at the Facility, and also developed and implemented marketing programs to attract residents or their responsible parties to the Facility. Accordingly, Barney L. Pierce is a defendant whose conduct forms a significant basis of the claims asserted herein and from whom significant relief is sought. The causes of action made the basis of this complaint arise out of the conduct of Barney L. Pierce's administration of the Facility. Barney L. Pierce is an Arkansas citizen and may be served with process at his last known business address: 1101 Waterwell Road, Crossett, Arkansas 71635.

29.     The Defendants collectively controlled the operation, planning, management, budget, and staffing of the Facility. The authority exercised by the Defendants over the Facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of policies and procedures used by the Facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the Defendants.

30.     The Defendants acted in concert and/or operated as a joint enterprise for the purpose of streamlining and furthering their similar business interests, as the Facility and the other corporate Defendants were owned by and controlled by the same owners, managers, and decision makers. The Defendants entered into agreements amongst themselves to pursue a common plan or design to understaff the Facility and thereafter actively took part to understaff the Facility throughout the Class Period.

31.     At all relevant times mentioned herein, the Defendants owned, operated and/or controlled the operation of the Facility, either directly or through the agency of each other and/or other agents, subsidiaries, servants, or employees.

32.     Because the Defendants named herein and others were acting in concert or engaged in a joint enterprise during the relevant times, the acts and omissions of each participant in the concerted action or joint enterprise are imputable to all other participants.  The actions of the Defendants and each of their servants, agents and employees as set forth herein, are imputed to each of the Defendants, jointly and severally.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over the subject matter and the parties to this action, and venue is proper in this Court.

## BACKGROUND AND FACTUAL ALLEGATIONS

34.     This case arises from Defendants' systemic failures to have sufficient staff at Pinewood Health and Rehabilitation to meet the needs of all of its residents, which caused Plaintiff and the proposed Plaintiff Class to suffer economic damages and the injuries described in more detail below.

35.     Persons admitted to the Facility have limitations caused by physical deterioration, cognitive decline, the onset or exacerbation of an acute or chronic illness or condition, or other

17

related factors. They need nursing care, medical treatment, and rehabilitation to maintain functional status, increase functional status, or live safely from day to day. The residents are elderly, disabled, confined to their beds or unable to rise from a bed or chair independently, and unable to groom, feed, toilet, or clean themselves. Consequently, these nursing home residents rely upon nursing home staff for not only skilled nursing care and treatment, but also essential primary care (herein "Basic Care") including:

    (a)    Toileting assistance;

    (b)    Incontinence care and changing of wet and soiled clothing and linen;

    (c)    Assistance transferring to and from bed and wheelchair;

    (d)    Assistance with dressing and personal hygiene;

    (e)    Assistance with bathing;

    (f)    Assistance with turning and repositioning residents in bed or chair;

    (g)    Feeding and drinking assistance; and

    (h)    Exercises/passive range of motion ("ROM") exercises.

36.    Basic Care is primarily delivered by Certified Nursing Aides or "CNAs."

37.    Defendants limited the number of CNA staff on duty at the Facility, which rendered the Facility incapable of meeting the needs of the residents. With the limited budgets for CNA staffing, the supply of CNA hours fell far short of the hours needed to adequately care for the residents. As a result, the residents did not get the care they needed or the care they paid for, as promised in the admission agreement and as the Defendants represented themselves as capable of providing.

38.    The difference between the services that Defendants were required to provide according to state and federal law and regulations—which Defendants promised to provide in

their admissions agreement—and the services that the Facility were actually capable of providing is profound.

39.     Interviews with residents' families and former employees, and analysis of survey results reported by the Office of Long Term Care confirm the chronic understaffing at the Facility and the Defendants' inability to provide the Basic Care services for which they were paid.

40.     More specifically, CNA understaffing led to a pattern and practice of failing to provide Basic Care Services to the residents of Pinewood Health and Rehabilitation during the class period. For example, the Facility failed to provide adequate staff:

(a)     To assist those residents who needed help with eating/drinking, grooming and personal and oral hygiene;

(b)     To timely respond to call lights activated by residents in need. Residents were left to soil themselves while waiting for assistance; others fell while attempting to walk to the bathroom unaided.

(c)     To re-position bed-bound and immobile residents; many residents remained in the same position for hours at a time, which caused discomfort and frequently resulted in painful, infection-prone pressure sores.

(d)     To supervise residents and ensure that the nursing home area remained free of accident hazards and risks. Many residents required the assistance of two aides for transfers and mobility; however, the lack of available staffing led to these residents being improperly and dangerously transferred, often resulting in falls or other injury.

(e)     To undertake ROM exercises – moving their joints and limbs, and assisting vulnerable residents who could walk or exercise. Without this assistance, residents lost mobility, rendering them even less independent.

(f)     To wash and bathe dependent residents;

(g)     To get dependent residents up, dressed, and out of bed.

(h)     To assist dependent residents with meals. Without help, some residents were unable to eat or drink in the time allotted, and some of them suffered weight loss and dehydration.

19

41.     These practices confirm that the Facility did not provide the Basic Care that was required and paid for, and highlight the very human toll of understaffing the Facility. Defendants' understaffing practices saved them millions of dollars at the expense of the residents' dignity and comfort, and jeopardized their safety. As a result of chronic understaffing, residents at the Facility were left for long periods in their own urine and waste; were not cleaned, repositioned, or moved, resulting in infections, pressure sores, and loss of mobility; were deprived of food and water; and suffered falls. The failure to provide adequate staff not only violated the law and the contractual terms of the admission agreement, it also degraded residents and stripped them of their dignity.

42.     As even more specific proof of the chronic understaffing at the Facility and the resulting harm to residents, surveys conducted by the Office of Long Term Care establish that the Defendants were on notice and aware of problems with understaffing causing harm to the residents. For example, just from 2013 to 2015, the Facility was cited for approximately twenty-eight (28) health related deficiencies. Specifically, the Facility has been cited for numerous deficiencies relevant to the injuries of Ms. Billings as well as the Plaintiff Class, including:

(a)     Failure to provide treatment or services to prevent/heal pressure sores (a deficiency for which the Facility was cited in three (3) separate surveys over a two and a half (2 ½) year period;

(b)     Failure to establish and maintain an infection control program;

(c)     Failure to provide care by qualified persons in accordance with the residents' written plan of care;

(d)     Failure to ensure that the Facility is free from accident hazards and provide supervision to residents to prevent avoidable accidents; and

(e)     Failure to assist those residents who need help with eating/drinking, grooming, and personal and oral hygiene.

20

43.    As demonstrated by the surveys, the Defendants were on notice and aware of problems with resident care, including those failures and deficiencies that caused injury to Lucille Billings at the Facility but did nothing to correct those problems.

44.    Under Arkansas law, the Department of Human Services, which licenses nursing facilities to operate, "shall not issue or renew a license of a nursing facility unless that facility employs the direct-care staff needed to provide continuous twenty-four-hour nursing care and service to meet the needs of each resident of the nursing facility and the staffing standards required by all state and federal regulations." Ark. Code Ann. § 20-10-1402(a).

45.    Under Arkansas law for direct-care givers,

...all nursing facilities shall maintain the following minimum direct-care staffing-to-resident ratios:

(1) One (1) direct-care staff to every six (6) residents for the day shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(2) One (1) direct-care staff to every nine (9) residents for the evening shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every forty (40) residents;

(3) One (1) direct-care staff to every fourteen (14) residents for the night shift. Of this direct-care staff, there shall be at least one (1) licensed nurse to every eighty (80) residents.

Ark. Code Ann. § 20-10-1403(a).

46.    Under Arkansas law, there are specific staffing standards regarding the minimum number of direct-care staff required in nursing facilities and "the staffing standard required...shall be the minimum number of direct-care staff required by nursing facilities and shall be adjusted upward to meet the care needs of residents." Ark. Code Ann. § 20-10-1402(b)(1). Therefore, a facility which provides staffing at the minimum number of direct-care givers required, is not in compliance with Arkansas law as those staffing numbers "shall be

21

adjusted upward to meet the care needs of residents." *Id.* By definition, failure to meet the minimum staffing requirements for direct-care under Arkansas law is also a direct violation of the federal law staffing requirements.

47.    The acts and omissions of Defendants were motivated by a desire to increase profitability by reducing expenditures for needed staff, training, supervision and care to levels that would predictably lead to severe injury for residents of the Facility.

## CAUSES OF ACTION AGAINST THE DEFENDANTS

### CLASS CLAIMS

48.    Plaintiff brings this action individually and in a representative capacity pursuant to Arkansas Rule of Civil Procedure 23 against the Defendants for violations of the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. § 4-88-101, et. seq., breach of the provider agreement, breach of the Defendants' standard admission agreement, and negligence, on behalf of Lucille Billings and all Arkansas citizens who were residents of the Facility and the estates of Arkansas citizens who were residents at the Facility any time from September 1, 2011 through December 1, 2015. Excluded from the class are residents and estates of residents that have sued in the past or currently have lawsuits pending against any of the Defendants, employees of the Defendants, and all employees of the Court in which this case is pending.

49.    From September 1, 2011, to December 1, 2015, the Defendants provided custodial care to more than 500 residents at the Facility. The class plaintiffs are so numerous that joinder of all individual claims is impracticable.

50.    Upon information and belief, at or near the time of admission to the Facility, all residents were required to sign the same or substantially the same admission agreement,

51.    Upon information and belief, in the admission agreement, the Defendants promised to provide nursing and personal care and other items required for the residents' known

22

physical condition or by law for the residents' health, safety, good grooming, and well-being. In addition, the Defendants also promised to obtain the services of the residents' physician whenever necessary.

52.   The Defendants owed a non-delegable duty to the Plaintiff and Plaintiff Class to provide adequate and appropriate staffing at the Facility at all times, and Defendants knew that state and federal law, which is incorporated into their admission agreement, required the Defendants to meet critical staffing requirements. These requirements include but are not limited to the following:

(a)   Meeting requirements for minimum numbers of facility staff members to be present at all times, Ark. Code Ann. § 20-10-1401 et seq.;

(b)   Meeting requirements for the minimum number of staff members to be adjusted upward to meet the care needs of residents, Ark. Code. Ann. § 20-10-1401 et seq.;

(c)   Meeting additional staffing requirements to assure that all residents receive the highest quality of life while protecting their health and welfare; Ark. Code Ann. § 20-10-1002 et seq.;

(d)   Meeting the federal minimum standards imposed by the United States Department of Health and Human Services, 42 C.F.R. § 405-301 et seq. including providing sufficient nursing staff and nursing personnel to ensure that each resident attains and maintains the highest practical physical, mental, and psychosocial well-being. 42 C.F.R. § 483.30; and

(e)   Meeting the requirements of other provisions of Arkansas and Federal law.

53.   In an effort to ensure that minimum staffing requirements are met, Arkansas law requires that Defendants honestly, accurately, regularly and truthfully:

(a)   Post daily personnel sign-in sheets reflecting levels of staffing per shift, Ark. Code Ann. § 20-10-1406; and

23

> (b)  Submit to the Office of Long Term Care a written report of all shifts which failed to meet the minimum staffing requirements, Ark. Code Ann. § 20-10-1407.

54.  Defendants filed such reports knowing that they were inaccurate and misleading.

55.  By understaffing the Facility, Defendants saved significant money and profited at the expense of all residents. Defendants operated and managed the Facility so as to maximize profits by reducing staffing levels below that which was needed to provide adequate care to residents that would comply with federal and state regulations governing skilled nursing facilities. Thus, Defendants intentionally and/or with reckless disregard for the consequences of their actions caused staffing levels at the Facility to be set so that the personnel on duty at any given time could not reasonably meet the needs of the residents, causing injury to the residents at the Facility. The Defendants have created a broad corporate culture in which understaffing is a standard practice and in which Defendants sought reimbursement of funds from government sources for services not provided.

56.  All residents in the Facility were injured by the Defendants' chronic and institutionalized understaffing. The lack of personnel in the Facility resulted in residents receiving a level of care (1) that was below the level of care that Defendants represented they were able to provide in their admission agreement, and (2) that failed to comply with state and federal minimum staffing requirements.

57.  The pervasive common question is whether the Facility was chronically understaffed so as to violate the residents' statutory and contractual rights and breached their legal duty to adequately staff the Facility. There are other questions of law and fact common to the Plaintiff Class which predominate over questions affecting only individual class members. Such common questions include, but are not limited to:

> (a)  Whether the Defendants chronically understaffed the Facility in violation of state and federal nursing home staffing laws and regulations;

<div align="center">24</div>

(b)   Whether Defendants' admission agreement required the Facility to have sufficient staff to meet the care needs of the residents as required by state and federal laws and regulations;

(c)   Whether Ark. Code Ann. 20-10-1201, et. seq. imposes minimum staffing requirements requiring the Facility to have sufficient staff to meet the care needs of the residents;

(d)   Whether Defendants failed to meet the minimum staffing requirements of Ark. Code Ann. 20-10-1201, et. seq., and the Defendants' admission agreement by failing to provide sufficient staff to meet the care needs of the residents;

(e)   Whether failure to meet minimum staffing requirements required by state and federal laws and regulations breaches the Defendants' admission agreement;

(f)   Whether failure to meet minimum staffing requirements required by state and federal laws and regulations violates Ark. Code Ann. 20-10-1201, et. seq;

(g)   Whether chronically understaffing the Facility in violation of state and federal laws and regulations is an unconscionable business practice in violation of the Arkansas Deceptive Trade Practices Act;

(h)   Whether the Defendants owed a legal duty to the residents to staff the Facility in compliance with state and federal laws and regulations;

(i)   Whether the Defendants breached their duty to staff the Facility in compliance with state and federal laws and regulations;

(j)   Whether failure to staff the Facility in compliance with state and federal regulations is a breach of the provider agreement;

(k)   Whether the admission agreement's failure to disclose the Facility's history of understaffing is an omission or concealment which constitutes a violation of the Arkansas Deceptive Trade Practices Act;

(l)   Whether the Defendants were unjustly enriched by failing to staff the Facility in compliance with state and federal laws and regulations;

(m)   Whether the Defendants in paragraphs 5-24, above, are control persons as defined in Ark. Code Ann. § 4-88-113(d)(1) and

25

therefore jointly and severally liable for the damages suffered by
the Plaintiff Class for the Defendants' deceptive trade practices.

58.     The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class
and have familiarity with the allegations expressed herein and are able to assist in decision
making as to the conduct of this litigation.

59.     Plaintiff's claims are typical of the claims of the class because the class
representative's claims arise from the Defendants' standard and routine practice of failing to
meet the minimum staffing requirements imposed by state and federal law and their own
admission agreement. The chronic understaffing at the Facility made it impossible for the few
staff who were there to perform their tasks at a level which complied with the protections
afforded by the Residents' Rights Act and other laws enacted and promulgated for the benefit
and protection of nursing home residents, and at the levels promised by the Defendants'
admission agreement.

60.     By understaffing the Facility, Defendants intentionally placed profits over people
and knowingly took advantage of residents who were unable to protect their interests because of
their physical and mental infirmities.  Systemic understaffing of the Facility directly resulted in
undignified living conditions for the residents, a breach of the admission agreement, a breach of
the provider agreement, a violation of state and federal law, a breach of the Facility's duty to
adequately staff the Facility, and unjust enrichment of the Defendants. The injuries sustained by
the proposed class representative is typical of the injuries of the class and further evidence
understaffing at the Facility.

61.     By understaffing the Facility, Defendants placed profits over compliance with
state and federal law. These decisions were made and implemented by the owners, board
members, management, employees and agents of Defendants and are an illegal, deceptive and
unconscionable business practice. Since at least September 1, 2011, and continuing through the

26

class period, the Defendants, as a standard and routine business practice, violated state and federal laws and regulations knowing that the well-being of all residents would be adversely affected as detailed herein.

62.     Defendants failed to discharge their obligations of care to Lucille Billings with a conscious disregard for her rights and safety. At all times mentioned herein, Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by Ms. Billings, as more fully set forth below. Defendants knew that the Facility could not provide the minimum standard of care to the weak and vulnerable residents of Pinewood Health and Rehabilitation. Moreover, the Defendants knew that their failure to staff the Facility in compliance with state and federal law made it impossible to provide all of the care and services to the Facility's residents as required by law and as promised in the Defendants' admission agreement. The severity of the recurrent negligence inflicted upon Ms. Billings while a resident of the Facility accelerated the deterioration of her health and physical condition and resulted in serious physical and emotional injuries. While a resident at the Facility, Ms. Billings sustained multiple injuries including, but not limited to the development and worsening of pressure sores, multiple falls, pneumonia, malnutrition, dehydration, respiratory arrest and failure due to aspiration and/or asphyxiation, poor hygiene, and loss of dignity, and death.

63.     As a direct and proximate result of the Defendants' conduct, the Plaintiff Class has suffered actual damage, both in terms of physical injuries, as detailed above, and economic damage. The Plaintiffs, or someone acting on behalf of the Plaintiffs, provided payment in exchange for services which were not provided, which were not as represented by the Defendants, or as represented in their admission agreement, and not up to the standards required by state and federal law and the Arkansas Residents' Rights Act.

27

64.    The Defendants, as the owners, agents, managers and operators of a private organization having the responsibility of protecting and caring for the residents, have direct and vicarious liability for the acts and omissions giving rise to this complaint.

65.    Plaintiffs have retained counsel qualified, experienced and able to conduct the litigation, and Plaintiffs have made arrangements to cover the costs associated with this litigation.

66.    If each class member was required to pursue individual actions, it would be economically and judicially unfeasible. A class action is appropriate and the superior method for the fair and efficient adjudication of this controversy.

### COUNT ONE: VIOLATION OF THE DECEPTIVE TRADE PRACTICES ACT

67.    Plaintiffs incorporate the allegations contained in Paragraphs 1–66 as if fully set forth herein.

68.    At all times pertinent to this cause of action, Plaintiffs were "elder person[s]" as defined by the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-201(a). As an "elder person" within the meaning of the Deceptive Trade Practices Act, the Plaintiffs have a private cause of action to recover actual damages, punitive damages, and reasonable attorney's fees pursuant to Ark. Code Ann. § 4-88-204.

69.    At all relevant times, the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. 4-88-107(a) ("ADTPA") provides that it is unlawful to:

    (a)    Knowingly take advantage of a consumer who is reasonably unable to protect his or her interest because of:

        i.    Physical infirmity; or

        ii.    A similar factor; and

    (b)    Engage in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

28

70.     Ark. Code Ann. § 4-88-108 provides that, when utilized in connection with the sale or advertisement of any goods, services, or charitable solicitation, it shall be unlawful for any person to (1) act, use or employ any deception, fraud or false pretense, or (2) conceal, suppress, or omit any material fact with intent that others rely on the concealment, suppression, or omission.

71.     The conduct of Defendants as described herein constitutes a deceptive practice in violation of the ADTPA. Defendants failed to inform the Plaintiff and the Plaintiff Class in Defendants' standard admission agreement that the Facility routinely failed to meet minimum staffing requirements imposed by state and federal law, which increased profits. Furthermore, Defendants represented themselves as providing services commensurate with the needs of the residents and in compliance with the requirements of Arkansas state law governing long-term care and nursing facilities.

72.     By understaffing the Facility, the Defendants knowingly took advantage of the most vulnerable consumers and those who were unable to protect themselves. Defendants' unfair and deceptive trade practices asserted herein are the type that the ADTPA is specifically designed to protect against and remedy.

73.     The Defendants' trade practices also are, and have been throughout the Class Period unconscionable, because the nursing home residents constitute a vulnerable population: they are elderly, ill, infirm, and often deteriorating. These residents often face the double burden of dependency and isolation. The Defendants accept these vulnerable residents for admission, and then knowingly fail to provide sufficient levels of staffing to provide the care required without disclosing in their admission agreement the Facility's dreadful history of understaffing.

29

74.    The Defendants also engage in, and have engaged in throughout the Class Period, substantively unconscionable trade practices by understaffing the Facility making it impossible to provide adequate care to residents even though it charged for services it could not provide.

75.    The Defendants knew that they were not meeting, and did not have sufficient CNA staff to meet the Basic Care needs of their residents as mandated by state and federal laws and regulations.

76.    The Defendants were further engaging in deceptive trade practices by infringing upon and depriving the Plaintiff Class of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201 *et seq.* ("Protection of Long Term Care Facilities Residents' Act") including, but not limited to, the following:

(a)    The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for the Plaintiff Class, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

1)    The right to receive adequate and appropriate custodial service, defined as care for the Plaintiff Class which entailed observation of diet and sleeping habits and maintenance of a watchfulness over their general health, safety, and well-being; and

(b)    The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

(c)    The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of the Plaintiff Class, and not directly furnished by the licensee;

(d)    The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

(e)    The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

30

(f)   The right to be free from mental and physical abuse, and from physical and chemical restraints;

(g)   The right of the Plaintiff Class to have privacy of their bodies in treatment and in caring for their personal needs;

(h)   The right to the obligation of the facility to keep full records of the admissions and discharges of the Plaintiff Class and their medical and general health status, including:

   1)   medical records;

   2)   personal and social history;

   3)   individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

   4)   making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; a

   5)   The right to be treated courteously, fairly, and with the fullest measure of dignity.

77.   As described in part and above, the Defendants received repeated citations related to failures of Basic Care in Office of Long Term Care surveys. Upon information and belief, they received these deficiencies despite taking steps to increase staffing and prepare staff for surveys immediately preceding the arrival of state surveyors – steps that would lead surveyors to believe levels of care provided were higher than they actually were during non-survey times.

78.   The conduct of the Defendants, as described herein, constitutes a deceptive practice in violation of the Arkansas Deceptive Trade Practices Act. The Defendants engaged in unconscionable, false, and/or deceptive acts or practices in business, commerce and/or trade by marketing themselves and holding themselves out to the public as being able to meet the needs of elder residents of Pinewood Health and Rehabilitation. The Defendants profited greatly as a

31

result of their deceptive trade practices, but the Defendants were aware that the Facility could not meet the needs of its residents.

79.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the Plaintiff Class have suffered actual damages.

## COUNT TWO: BREACH OF THE ADMISSION AGREEMENT

80.     Plaintiffs incorporate the allegations contained in paragraphs 1–79 as if fully set forth herein.

81.     Before being admitted to Pinewood Health and Rehabilitation, residents, or those acting on their behalf, including Lucille Billings, were required to enter into a resident admission agreement, whereby the facility agreed to provide nursing and custodial care, necessary goods, services, and/or treatment in exchange for valuable consideration.

82.     The residents, or those acting on their behalf, paid for or caused to be paid for, the goods, services, care and treatment, including personal or custodial care, and professional nursing care the Defendants promised to provide.

83.     The Defendants breached their contractual duties, both expressed and implied, by understaffing the Facility and creating a situation whereby it was impossible for caregivers to provide the care and services as described in the agreement, causing damage to the residents.

84.     As a result, the Plaintiffs are entitled to compensatory damages, and Plaintiff and the Plaintiff Class assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

85.     The Defendants are also liable for all consequential damages, because the Defendants knew, or should have known, that breaches of the admissions agreement would result

in consequential damages to the Plaintiff Class, and, under the circumstances, the Defendants should have understood that they had agreed to assume responsibility for any consequential damages caused by their breaches of the admissions agreement.

86.    Plaintiffs seek judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Defendants to provide the care, goods, and services promised under the admission agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

87.    Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or should have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the admission agreement would naturally and probably result in injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

88.    Plaintiff, for good cause, is unable to attach a copy of the actual admissions agreement upon which this claim is based, because it is in the possession and control of the Defendants.

## COUNT THREE: BREACH OF THE PROVIDER AGREEMENT

89.    Plaintiff incorporates the allegations contained in paragraphs 1-88 as if fully set forth herein.

90.    Upon becoming a resident of Pinewood Health and Rehabilitation, the residents, many of whom were Medicare and/or Medicaid recipients, became third-party beneficiaries of the contract or provider agreement between the Defendants and the state and federal governments, an example of which is attached as **Exhibit B**.

91.    For consideration duly paid by the residents, or on their behalf, the Defendants agreed to provide residents with personal and custodial care and professional nursing care in

33

compliance with the requirements set forth in the provider agreements, as well as the minimum standards of care imposed by applicable law including the statutes and regulations set out herein. In addition, by entering into the agreement, the Defendants promised to "comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State." The Defendants further agreed that "the rights and privileges of the residents [were] of primary concern to the parties" and covenanted to "protect and preserve" the rights of the residents. The parties to the contract agreed "that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement." *See* **Exhibit B.**

92.    As the name implies, the provider agreement exists to pay for and provide for resident, personal, or custodial care and professional nursing care. Additionally, the provider agreement between the Defendants and the state and federal government was clearly intended to benefit and protect the residents of Pinewood Health and Rehabilitation by requiring the Defendants to provide quality care consistent with federal and state statutes and regulations.

93.    The Defendants breached the provider agreement and committed multiple acts of nonfeasance in failing to adequately staff the Facility and provide the care, goods, and services to industry standards, as required by law and as agreed, including but not limited to:

(a)    Failing to provide dietary services, including special diets, supplemental feedings, special delivery preparation, assistance, and equipment required for preparing and dispensing oral feedings and special feeding devices;

(b)    Failing to provide personal or custodial services and nursing care;

(c)    Failing to implement policies and procedures so as to prevent infringement or deprivation of the Plaintiff Class's rights as residents of a long term care facility;

(d)    Failing to comply with protections, duties and obligations imposed by applicable state and federal statutes and regulations as alleged herein; and

34

    (e)    Failing to staff Robinson Nursing and Rehabilitation Center with sufficient personnel to adequately meet the needs of the Plaintiff Class, failing to comply with the rules and regulations promulgated by the state and federal governments, and in failing to provide staff qualified to meet the needs of the residents.

94.    As a result of the Defendants' breach of the provider agreement, Plaintiffs assert a claim for judgment for all compensatory damages including the amount a jury determines is sufficient compensation for the loss of the benefit of promised services and care and treatment, in an amount that exceeds that required for federal court jurisdiction in diversity of citizenship cases.

95.    The Defendants are also liable for all consequential damages, because the Defendants knew, or should have known, that breaches of the provider agreement would result in consequential damages to the Plaintiff Class, and, under the circumstances, the Defendants should have understood that they had agreed to assume responsibility for any consequential damages caused by their breaches of the provider agreement.

96.    Plaintiffs seek judgment for all foreseeable consequential damages, which flowed naturally from the failure of the Defendants to provide the care, goods, and services promised under the provider agreement, including but not limited to medical expenses, pain and suffering, and mental anguish.

97.    Plaintiffs are entitled to seek punitive damages for breach of contract, because the Defendants knew or ought to have known, in the light of the surrounding circumstances, that their nonfeasance in breach of the provider agreement would naturally and probably result in injury or damage, yet the Defendants breached the agreement in reckless disregard of the consequences from which malice may be inferred.

98.     A copy of the provider agreement form is attached to this Complaint as **Exhibit B**; however, the Plaintiff, for good cause, is unable to attach a copy of the actual agreement signed by the Defendants because it is in the possession and control of the Defendants.

## COUNT FOUR: UNJUST ENRICHMENT

99.     Plaintiff incorporates the allegations contained in Paragraphs 1 – 98 as if fully set forth herein.

100.     In violation of the Residents' Rights Act, the Arkansas Deceptive Trade Practices Act and other state and federal laws, the Defendants conspired to receive and did receive payments from residents and payments made on behalf of residents for care and services that they could not and did not provide, and Defendants were not entitled to receive such payment as a result of the chronic understaffing at the Facility and their inability to provide the services. The Defendants were unjustly enriched by receiving money which they were not legally entitled to receive.

101.     The Defendants were aware or should have been aware under the circumstances that payments received from residents or on behalf of residents were being made in the expectation that Defendants could and would provide the level of care and services the Defendants represented that they were capable of providing in their admissions agreement and which complied with all applicable state and federal laws and regulations.

102.     The Defendants should not be permitted to unjustly enrich themselves at the expense of the Plaintiff and Plaintiff Class. Equity and good conscience requires the Defendants to make restitution for all funds received in violation of state and federal laws and regulations and in violation of their duty to adequately staff the Facility.

## CLASS PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of the Estate of Lucille Billings and on behalf of the Plaintiff Class pray for judgment against Defendants as follows:

(a)      For damages in an amount adequate to compensate the Plaintiffs for the injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

(b)      For all actual, general and special damages caused by the alleged conduct of Defendants.

(c)      For the costs of litigating this case.

(d)      For attorney's fees pursuant to Ark. Code Ann. § 16-22-308 and Ark. Code Ann. § 4-88-204 and 113(f).

(e)      For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences the residents and to deter Defendants and others from repeating such atrocities.

(f)      For all other relief to which Plaintiffs are entitled.

## THE ESTATE OF LUCILLE BILLINGS' INDIVIDUAL CLAIMS

103.   Plaintiff incorporates the allegations contained in Paragraphs 1 – 102 as if fully set forth herein.

104.   Defendants were aware of Ms. Billings' medical condition and needs when they agreed to provide nursing and personal care required by her physical condition and by law for her health, safety and well-being.

105.   In an effort to ensure that Lucille Billings and other residents whose care was partially funded by the government were placed at Pinewood Health and Rehabilitation,

37

Defendants held themselves out to the Arkansas Department of Human Services (DHS) and the public at large as being:

(a)     Skilled in the performance of nursing, rehabilitative and other medical support services;

(b)     Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

(c)     Able to specifically meet the total nursing home, medical and physical therapy needs of Lucille Billings and other residents; and

(d)     Licensed by DHS and complying on a continual basis with all rules, regulations and standards established for nursing homes.

106.     Defendants were on notice and aware of problems with resident care at Pinewood Health and Rehabilitation based upon surveys conducted at the Facility by the Office of Long Term Care prior to and during the residency of Lucille Billings. The Facility was consistently cited for numerous deficiencies in the care provided to residents, which are discussed at length above. *See* ¶ 42.

107.     As a result of the Defendants' conduct described herein and the Defendants' negligent operation of the Facility, Lucille Billings suffered physical and emotional injury including, but not limited to those described in ¶ 62, and which caused her to lose her personal dignity and suffer extreme and unnecessary pain, anguish, emotional trauma, and loss of life.

108.     During Lucille Billings' residency at the Facility, Ms. Billings was under the care, supervision and treatment of the Defendants and the injuries complained of were proximately caused by the acts and omissions of the Defendants.

<div align="center">COUNT ONE: NEGLIGENCE</div>

109.     Plaintiff incorporates the allegations contained in Paragraphs 1 – 108 as if fully set forth herein.

<div align="center">38</div>

110.   The Defendants owed a non-delegable duty to residents, including Lucille Billings, to adequately staff the Facility and to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

111.   The Defendants owed a non-delegable duty to their residents, including Lucille Billings, to exercise reasonable care in adequately staffing the Facility and providing care and services in a safe and beneficial manner.

112.   The Defendants owed a non-delegable duty to their residents, including Lucille Billings, to hire, train and supervise employees to deliver care and services to residents in a safe and beneficial manner.

113.   The Defendants owed a non-delegable duty to residents, including Lucille Billings, to use reasonable care in adequately staffing the Facility in order to treat their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

114.   The Defendants owed a non-delegable duty to residents, including Lucille Billings, to use reasonable care to treat the residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

115.   The Defendants owed a non-delegable duty to assist all residents, including Lucille Billings, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

116.   The Defendants breached these duties by failing to adequately staff the Facility and failing to exercise reasonable care causing injury, abuse and neglect to Lucille Billings. Understaffing the Facility caused the following acts and omissions, which is not exhaustive or an all-inclusive list:

      (a)   The failure to follow physician orders to ensure that residents were free of significant medication errors;

<div align="center">39</div>

(b)     The failure to ensure that Lucille Billings attained and maintained her highest level of physical, mental, and psychosocial well-being;

(c)     The failure to establish, publish and/or adhere to policies for nursing personnel concerning the care and treatment of residents with nursing, medical and psychosocial needs similar to those of Lucille Billings;

(d)     The failure to increase the number of nursing personnel to ensure that Lucille Billings received timely and accurate care assessments, and proper treatment, medication and diet;

(e)     The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Lucille Billings;

(f)     The failure to increase the number of nursing personnel at the facility to ensure that Lucille Billings:

   1)     Received timely and accurate care assessments;
   2)     Received proper treatment, medication, and diet; and
   3)     Was protected from accidental injuries by the correct use of ordered and reasonable safety measures.

(g)     The failure to adequately screen, evaluate, and check references, test for competence and use ordinary care in selecting nursing personnel to work at the Facility;

(h)     The creation of and/or the failure or refusal to identify and correct the injuries, conditions, and circumstances at the Facility;

(i)     The failure to terminate employees at the Facility assigned to Lucille Billings who were known to be careless, incompetent and unwilling to comply with the policies and procedures of the Facility and the rules and regulations promulgated by the Arkansas Department of Human Services and the Office of Long Term Care;

(j)     The failure to assign nursing personnel at the Facility duties consistent with their education and experience based on:

   1)     Lucille Billings' medical history and condition, nursing and rehabilitative needs;
   2)     The characteristics of the resident population residing in the area of the Facility where Lucille Billings was a resident; and,
   3)     The nursing skills needed to provide care to such resident population.

(k)     The failure by the members of the governing body of the Facility to discharge their legal and lawful obligation by (1) ensuring that the rules and regulations designed to protect the health and safety of residents, such as Lucille Billings, as promulgated by the Arkansas Department of Human Services and the Arkansas Office of Long Term Care, were consistently complied with on an ongoing basis and (2) ensuring appropriate corrective measures were implemented to correct problems concerning inadequate resident care;

(l)     The failure to adopt adequate guidelines, policies, and procedures of the Facility for documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at the Facility, regardless of whether such complaint derived from a resident of the Facility, an employee of the Facility or any interested person;

(m)    The failure to maintain medical records on Lucille Billings in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible and systematically organized with respect to diagnosis, treatment and assessment and establishment of appropriate plans of care and treatment; and

(n)     The failure to properly in-service and orient employees to pertinent patient care needs to maintain the safety of residents.

117.    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to adequately staff and provide the ordinary care listed above would result in devastating injuries to Lucille Billings.

118.    The Defendants' also caused violation of certain laws and regulations in force in the State of Arkansas at the time of the occurrences discussed herein including, but not limited to, the following:

(a)     By failing to provide sufficient nursing staff and nursing personnel to ensure that Lucille Billings attained and maintained her highest practicable physical, mental and psychosocial well-being;

(b)     By failing to provide a safe environment; and

(c)     By failing to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident.

41

119.   The Defendants were further negligent by infringing upon and depriving Lucille Billings of the rights guaranteed by Ark. Code Ann. §§ 20-10-1201 *et seq.* including, but not limited to, the following:

(a)   The right to receive adequate and appropriate health care and protective and support services, including social services, mental health services, if available, planned recreational activities, and therapeutic and rehabilitative services consistent with the resident care plan for Lucille Billings, with established and recognized practice standards within the community, and with rules as adopted by federal and state agencies, such rights include:

1)   The right to receive adequate and appropriate custodial service, defined as care for Lucille Billings which entailed observation of her diet and sleeping habits and maintenance of a watchfulness over her general health, safety, and well-being; and

(b)   The right to appropriate observation, assessment, nursing diagnosis, planning, intervention, and evaluation of care by nursing staff;

(c)   The right to access to dental and other health-related services, recreational services, rehabilitative services, and social work services appropriate to the needs and conditions of Lucille Billings, and not directly furnished by the licensee;

(d)   The right to a wholesome and nourishing diet sufficient to meet generally accepted standards of proper nutrition, guided by standards recommended by nationally recognized professional groups and associations with knowledge of dietetics, and such therapeutic diets as may be prescribed by attending physicians;

(e)   The right to a facility with its premises and equipment, and conduct of its operations maintained in a safe and sanitary manner;

(f)   The right to be free from mental and physical abuse, and from physical and chemical restraints;

(g)   The right of Lucille Billings to have privacy of her body in treatment and in caring for her personal needs;

(h)   The right to the obligation of the facility to keep full records of the admissions and discharges of Lucille Billings and her medical and general health status, including:

1)   medical records;

2)   personal and social history;

42

3)    individual resident care plans, including, but not limited to, prescribed services, service frequency and duration, and service goals;

4)    making it a criminal offense to fraudulently alter, deface, or falsify any medical or other long-term care facility record, or cause or procure any of these offenses to be committed; a

5)    The right to be treated courteously, fairly, and with the fullest measure of dignity.

120.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to adequately staff the Facility and provide the care listed above. Each of the foregoing acts of negligence on the part of the Defendants was a proximate cause of Lucille Billings' injuries, which were foreseeable. Ms. Billings suffered personal injury including extreme pain and suffering, mental anguish, disfigurement, disability, degradation, loss of personal dignity, emotional distress, and loss of life.

121.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct, Ms. Billings suffered the injuries described throughout this complaint. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, emotional distress and loss of life in an amount exceeding that required by federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE

122.    Plaintiff incorporates the allegations contained in Paragraphs 1 – 121 as if fully set forth herein.

123.    The Defendants are either medical care providers as defined by Ark. Code Ann. § 16-114-201(2) and/or liable for medical care providers as defined by Ark. Code Ann. § 16-114-

43

201(2).

124.    The Defendants owed a non-delegable duty to residents, including Lucille Billings, to use reasonable care in treating their residents with the degree of skill and learning ordinarily possessed and used by nursing home facilities in the same or similar locality.

125.    The Defendants owed a non-delegable duty to assist all residents, including Lucille Billings, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

126.    The Defendants failed to meet the applicable standards of care and violated their duty of care to Lucille Billings through mistreatment, abuse and neglect. The Defendants failed to adequately supervise nurses and aides and failed to hire sufficient nurses and aides. As such, the nurses and aides were unable to provide Lucille Billings the requisite care, and as a result, negligent acts occurred as set forth herein. The medical negligence of Defendants includes, but is not limited to, the following acts and omissions:

a)    The failure to ensure that Lucille Billings received the following:

1)    Timely and accurate care assessments;
2)    Proper treatment, medication and diet;
3)    Necessary supervision; and
4)    Timely nursing and medical intervention due to a significant change in condition.

b)    The failure to provide, implement, and ensure adequate nursing care plan revisions and modifications as the needs of Lucille Billings changed;

c)    The failure to provide, implement and ensure that an adequate nursing care plan for Lucille Billings was followed by nursing personnel;

d)    The failure to provide Lucille Billings with adequate and appropriate nursing care, treatments, and medications;

e)    The failure to ensure that Lucille Billings was assessed in order to receive adequate and proper nutrition, fluids, and therapeutic diet;

f)    The failure to provide adequate care and treatment to Lucille Billings; and

44

g)    The failure to adequately and appropriately monitor Lucille Billings and recognize significant changes in her health status.

127.    A reasonably prudent nursing home, operating under the same or similar conditions, would not have failed to provide the care listed above. Each of the foregoing acts of negligence on the part of the Defendants was a proximate cause of Lucille Billings' injuries, which were foreseeable. Ms. Billings suffered personal injury, including excruciating pain and suffering, mental anguish and emotional distress, which caused her family to suffer more than normal grief upon her death. Plaintiff prays for compensatory damages against the Defendants for the wrongful death of Lucille Billings, including the grief suffered as well as the expenses of the funeral and other related costs.

128.    The Defendants were negligent and reckless in breaching the duties owed to Lucille Billings under the Medical Malpractice Act for the reasons specifically enumerated in this Complaint.

129.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless, malicious, and/or intentional conduct, Lucille Billings suffered injuries as described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants, including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, emotional distress and loss of life in an amount exceeding that required for federal court jurisdiction in diversity of citizenship cases, to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

**INDIVIDUAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Delois Pippen, as Special Administratrix of the Estate of Lucille Billings, prays for judgment against the Defendants as follows:

45

(a)     For damages in an amount adequate to compensate the Plaintiff for the injuries and damages sustained and exceeding that required by federal court jurisdiction in diversity of citizenship cases.

(b)     For all general and special damages caused by the alleged conduct of Defendants.

(c)     For the costs of litigating this case.

(d)     For punitive damages sufficient to punish Defendants for their egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Barbara Morris and to deter Defendants and others from repeating such atrocities.

(e)     For all other relief to which Plaintiff is entitled.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

Delois Pippen, as Special Administratrix of the
Estate of Lucille G. Billings, deceased, and on
behalf of the wrongful death beneficiaries of Lucile
G. Billings and on behalf of all other similarly
situated

By:   _____

Brian D. Reddick (94057)
Brent L. Moss (95075)
Robert W. Francis (2007032)
Matthew D. Swindle (2012168)
**Reddick Moss, PLLC**
One Information Way, Suite 105
Little Rock, Arkansas  72202
Telephone:      (501) 907-7790
Facsimile:      (501) 907-7793

and

H. Gregory Campbell (92001)
Campbell Law Firm, P.A.
One Information Way, Box 101
Little Rock, AR 72202
Telephone:      (501) 375-5659

*Attorneys for the Plaintiff*

47

IN THE CIRCUIT COURT OF ASHLEY COUNTY, ARKANSAS
PROBATE DIVISION

IN THE MATTER OF THE ESTATE OF
LUCILLE G. BILLINGS, DECEASED

NO.: PR-2015- 44-3

## ORDER APPOINTING
## SPECIAL ADMINISTRATRIX

Now on this day, comes on before this Court, Delois Pippen having petitioned the Court for appointment of Special Administratrix of the Estate of Lucille G. Billings, deceased, and the Court after reviewing the file and being well and sufficiently advised in the premises, doth make the following findings and enter the following order:

(1)

The Decedent, Lucille G. Billings, age 90, who resided at Pinewood Health & Rehab, 1101 Waterwell Road, Crossett, Arkansas 71635, died intestate, on or about the 3rd day of January, 2015. She is survived by the Petitioner, Delois Pippen, and Lois Jean Billings.

(2)

Petitioner seeks this Special Administration so that she may pursue all civil claims, including wrongful death claims against the appropriate individuals.

(3)

That the Petition for Appointment of Special Administratrix is in compliance with the Probate Code for the State of Arkansas.

(4)

That the Clerk is hereby authorized to issue Letters of Special Administration to the Special Administratrix upon filing her Acceptance as Special Administratrix.



EXHIBIT
A

(5)

The Court finding that Delois Pippen is qualified by law to be appointed as Special Administratrix of the Estate of Lucille G. Billings.

IT IS CONSIDERED, ORDERED AND ADJUDGED that the Special Administration of the Estate of Lucille G. Billings, be, and the same, is hereby opened.

IT IS FURTHER ORDERED that Delois Pippen, be, and she is hereby, appointed as Special Administratrix of the Estate of Lucille G. Billings, deceased, to serve without bond, and the Clerk of the Court is directed to issues Letters of Special Administration to her upon filing her Acceptance.

IT IS FURTHER ORDERED that the employment of Byrd Law Firm, "P.A." as the attorneys for the Special Administration and for all civil claims.

GIVEN UNDER MY HAND AS CIRCUIT JUDGE this ___ day of _____, 2015.

_____
CIRCUIT JUDGE

FILED FOR RECORD
ASHLEY COUNTY CLERK

2015 MAY 11  AM 9: 51

CHRISTIE MARTIN

BY _____

# CONTRACT
# TO PARTICIPATE IN THE ARKANSAS NURSING HOME PROGRAM
# ADMINISTERED BY THE DIVISION OF ECONOMIC AND MEDICAL SERVICES
# OFFICE OF LONG TERM CARE
# UNDER TITLE XIX (MEDICAID)

This Facility agreement made and entered into this the ________ (to be completed by DMS) day of ________ (to be completed by DMS), by and between ________ (to be completed by DMS) ________ hereinafter called Provider, and the Department of Economic and Medical Services, Office of Long Term Care hereinafter called State.

WITNESSTH:

I. Provider agrees that its responsibilities hereunder shall be as follows:

A. To keep all records, as set forth in applicable Federal and/or State regulations, and Long Term Care Provider Manuals, and any duly promulgated changes in or additions thereto, and to fully disclose the extent of all services provided to individuals receiving assistance under the State Plan.

B. To make available for inspection all records herein specified to satisfy audit requirements under the program; to furnish all such records for audit conduction periodically by State or its designated agents and/or representatives of the Department of Human Services, and the Department of Health and Human Services of the United States of America or its designees or representatives. For all Medicaid recipients these records shall include, but not necessarily be limited to those records as defined in Section A above.

C. Provider shall at all times provide State access to the facility, residents, and resident records. Provider expressly agrees not to hinder, impede, or otherwise restrict State from carrying out its official duties, and expressly agrees to reasonably assist State in carrying out its official duties. In this context, "official duties" include inspections, surveys and investigations and reviews as prescribed by State and Federal laws, rules and regulations, and shall allow "observation and recordings made and conducted relative to long term care facilities, long term care residents, and records of or possessed by facility and/or residents. 'Observation' includes the right and ability to move in or around the interior and/or exterior, including resident rooms of a long term care facility, unaccompanied (except upon request if the inspector[s]) at any time. 'Recordings' include photostatic copies, notes, writings, drawings, and photographs (whether still or motion, in accordance with Section 2 of Ark. Act 33 of 1989), and sound recordings."

D. To accept only residents who have met the requirements of the duly promulgated Pre-Admission Screening Program and for whom the facility can provide all required and necessary services. Provider specifically herein agrees to insure availability of all medications prescribed by the resident's physician.

E. To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, and Section 504 of the Rehabilitation Act of 1973. Provider agrees herewith that it has been furnished with a copy of the LTC Provider Manual, and shall be bound by all provisions thereof, including any and all changes and/or additions thereto.

F. To comply with all rules, regulations, changes in and additions thereto issued by the United States Department of Health and Human Services pertaining to nursing homes, and to comply with all rules, regulations, duly promulgated changes in and additions thereto issued by the State.

G. To meet all requirements of applicable Life Safety Code and all State Fire and Safety Codes.

H. Provider will not transfer or discharge any recipient without a minimum of 30 days advance notice to the individual or a responsible person. Provider may transfer or discharge a Medicaid recipient under the following circumstances:

1. The transfer or discharge is necessary to meet the resident's welfare and the resident's welfare cannot be met in the facility;
2. The transfer or discharge is appropriate because the resident's health has improved sufficiently so the resident no longer needs the services provided by the facility;
3. The safety of the individuals in the facility is endangered;
4. The health of individuals in the facility would otherwise be endangered;
5. The resident has failed, after reasonable and appropriate notice, to pay (or to have paid under Title XIX or Title XVIII on the resident's behalf an allowable charge imposed by the facility for an item or service requested by the resident and for which a charge may be imposed consistent with federal and state laws and regulations; or
6. The facility ceases to operate.

The notice of transfer or discharge must be made at least 30 days in advance of the resident's transfer or discharge except:

a. In a case described in item H(3) or H(4) above;
b. In a case described in item H(2) above where the resident's health improves sufficiently to allow for a more immediate transfer or discharge;
c. In a case described in item H(1) above where a more immediate transfer or discharge is necessitated by the resident's urgent medical needs; or
d. In a case where the resident has not resided in the facility for 30 days.

I. Provider shall give 30 day notice to the State prior to any change of ownership including a change which contemplates or provides for the assumptions of existing liabilities by the new owner.

EXHIBIT B

J.   To bill State (Medicaid) only after the service has been provided.

K.   To accept Medicaid reimbursement rates determined by the State as full payment for all Medicaid eligible care and services required by the classification of each resident and rendered by the provider, and make no additional charges to the resident, or to accept any additional payment from the resident, relatives, or responsible parties for that service which is covered under the Medicaid Program.

L.   To promptly refund to the resident or responsible party any unused portion of recipient applied income collected in advance and not owed due to death, discharge or transfer. Recipient income is to be prorated on a per diem basis according to the number of days in the month.

M.   To promptly refund to a resident or other responsible person any deposit or entrance fee collected while awaiting approval for Medicaid eligibility to the extent those days are covered by Medicaid payments.

N.   To provide all services and specific items as defined in the Medical Assistance Reasonable Cost Related Reimbursement Manual for Long Term Care Facilities (MARCRRM-LTCF), or any additions thereto or subsequent manuals. Receipt of Medicaid per diem reimbursement rates is considered payment in full for services and items included in the MARCRRM.

O.   To accept assignment and file a claim in a timely and proper manner with all third party sources, and if said claim is collected from a third party, to reimburse Medicaid up to the amount Medicaid paid for said services.

P.   The $30 Personal Needs Allowance which is provided for by the Medicaid Program for personal expenditures of a resident cannot and shall not be used for any other purpose except as authorized in writing by the resident or responsible party.

Q.   To comply with all State and/or Federal regulations pertaining to resident personal funds and to provide the State access to patient account records or any other financial records maintained by the provider for benefit of the patient. The new owner must specify in writing which owner will be responsible for recipient Medicaid claims and facility account receivable balances resulting from dates of service prior to the ownership change.

Further Provider agrees that it will not prevent or interfere with the individual or responsible person, or the Office of Long Term Care in the transfer or discharging of a patient when same is appropriate.

II.   The State agrees that it shall have the following responsibilities hereunder:

A.   To make timely payments to Provider for the appropriate Medicaid services provided the eligible Medicaid recipients in accordance with the terms of the LTC Provider Manual or other appropriate regulations and procedures previously mentioned herein.

B.   To notify Provider of any changes of rules or regulations to be followed hereunder as promptly as is practicable at all times.

C.   To safeguard the confidentiality of any Medicaid records maintained for the State, its agents, and/or fiscal intermediary as specified in Federal and State regulations.

III.   Mutual Covenants, Duties, Responsibilities, and Undertakings

A.   State and Provider mutually agree to comply with all Federal and State laws, rules and regulations.

B.   State and Provider agree that the rights and privileges of the residents are of primary concern to the parties and the parties expressly agree and covenant to protect and preserve those rights and privileges and that failure to act in a manner consistent with those rights and privileges shall constitute an immediate breach of agreement and may result in immediate termination of this agreement without recourse.

C.   State and Provider agree and covenant that this written instrument constitutes the entirety of the agreement between both parties and no statement or representations not reduced to writing or incorporated herein by express reference shall be binding upon the parties and such statements or representations not incorporated herein by express reference or not contained herein shall constitute no part of this agreement.

IV.   This contract may be terminated in accordance with the following provisions:

A.   This contract may be terminated by either party by giving 30 days written notice to the other party.

B.   This contract may be terminated immediately by State for the following reasons:

   1. Federal sanction of Provider.
   2. Change of ownership.
   3. Violation of any provision herein contained.
   4. In accordance with termination procedures as set out in appropriate Federal and/or State regulations or rules by which Provider is bound hereunder.

|  | **Provider** | **Division of Economic and Medical Services** |
|--|--|--|
|  |  | **Office of Long Term Care** |

By: _____          By: _____
              (Signature)                                          (Signature)

Name: _____          Name: _____ Carol Shockley _____
              (Type Name)                                         (Type Name)

Title: _____ Administrator _____          Title: _____ Director, LTC _____

Date: _____          Date: _____

EMS-711 (R. 9/89)

2 of 2