IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | | |
|---|---|---|
| DELOIS PIPPEN, as Special Administratrix of the Estate of Lucille G. Billings, deceased, and on behalf of the wrongful death beneficiaries of Lucille G. Billings; and on behalf of all others similarly situated | | PLAINTIFF |
| v. | Case No. 1:16-cv-1069 | |
| PINEWOOD HEALTH AND REHABILITATION, LLC; ARKANSAS SNF OPERATIONS ACQUISITION, LLC; ARKANSAS NURSING HOME ACQUISITION, LLC; CSCV HOLDINGS, LLC; CAPITAL FUNDING GROUP, INC.; SLC PROFESSIONALS, LLC; SLC PROFESSIONALS AR7, LLC; SLC PROFESSIONALS HOLDINGS, LLC; SLC OPERATIONS HOLDINGS, LLC; SLC OPERATIONS, LLC; SLC ADMINISTRATIVE SERVICES OF ARKANSAS, LLC; SENIOR LIVING COMMUNITIES OF ARKANSAS, LLC; ADDIT, LLC; SLC OPERATIONS MASTER TENANT, LLC; SLC PROPERTIES, LLC; 1101 WATERWELL ROAD, LLC; CSCV ARKANSAS REALTY, LLC; ALAN ZUCCARI; BRIAN REYNOLDS; JOHN W. DWYER; DANIEL BAIRD; TROY MORRIS, in his capacity as Administrator of Pinewood Health and Rehabilitation, LLC; EMILY GREENE, in her capacity as Administrator of Pinewood Health and Rehabilitation, LLC; CAROL HOELSCHER, in her capacity as Administrator of Pinewood Health and Rehabilitation, LLC; and BARNEY L. PIERCE, in his capacity as Administrator of Pinewood Health and Rehabilitation, LLC | | DEFENDANTS |

## ORDER

Before the Court is Defendants' Motion for Judgment on the Pleadings as to Class Claims. (ECF No. 32). Plaintiff filed a response. (ECF No. 42). Defendants filed a reply. (ECF No. 43). The Court finds the matter ripe for consideration.

### I. BACKGROUND

On February 3, 2016, Plaintiff DeLois Pippen filed this putative class action individually and on behalf of the estate of her mother, Lucille G. Billings ("Ms. Billings"), and on behalf of all others similarly situated, in the Circuit Court of Ashley County, Arkansas, alleging that

Defendants' policies of staffing and operating Pinewood Health and Rehabilitation, LLC, ("Pinewood") resulted in injury to all residents of the nursing home during a particular time period. Plaintiff asserts class claims of: (1) violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"); (2) breach of contract, based on an admission agreement; (3) breach of contract, based on a provider agreement; and (4) unjust enrichment. Plaintiff also asserts individual claims of negligence and medical malpractice on behalf of Ms. Billings' estate.

Defendants are various corporate entities and individuals involved in some fashion with Pinewood, a nursing home in Crossett, Arkansas. Plaintiff alleges that Defendants knowingly engaged in a practice of chronic understaffing at Pinewood in violation of state and federal law. Plaintiff alleges further that this practice of understaffing resulted in Pinewood's inability to provide its residents with basic-care services. Plaintiff's mother, Ms. Billings, was a resident of Pinewood from February 15, 2013, until March 5, 2013; from October 24, 2013, until October 29, 2013; and from December 12, 2014, until her death on January 3, 2015. Plaintiff alleges that Ms. Billings' time at Pinewood accelerated the deterioration of her health and physical condition, and resulted in her suffering multiple physical and emotional injuries, including "the development and worsening of pressure sores, multiple falls, pneumonia, malnutrition, dehydration, respiratory arrest and failure due to aspiration and/or asphyxiation, poor hygiene, and loss of dignity, and death." (ECF No. 4). Plaintiff alleges further that, from September 1, 2011, until December 1, 2015, Pinewood's other residents suffered similar injuries as a result of Pinewood's understaffing.

Plaintiff alleges that the residents at Pinewood are "elderly, disabled, confined to their beds or unable to independently rise from a bed or chair, and are unable to groom, feed, toilet, or clean themselves." (ECF No. 4). Thus, the residents rely on Pinewood's staff for skilled nursing

care and treatment, as well as assistance with basic tasks such as eating, dressing, bathing, exercising, turning and repositioning in their bed or chair, and using the toilet. Pinewood employs Certified Nursing Aides ("CNAs") to provide this type of assistance to residents.

Plaintiff alleges that Defendants systematically failed to meet the needs of Pinewood's residents by limiting the budget for CNA staffing. As a result, Plaintiff states that there were not enough CNAs to provide residents the basic-care services described above. This allegedly led to many immobile residents developing pressure sores because they were not properly repositioned; residents soiling themselves or falling while attempting to walk unaided to the bathroom; some residents suffering weight loss or dehydration because they were unable to independently eat or drink; and residents not being able to perform exercises, resulting in lost mobility. Plaintiff alleges that Defendants saved millions of dollars because of their understaffing practices at Pinewood. The Arkansas Office of Long Term Care cited Pinewood for twenty-eight health-related deficiencies from 2013 to 2015.

On July 15, 2016, Defendants removed the case to this Court. On November 9, 2016, Defendants filed the instant motion pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(c), asking the Court to dismiss Plaintiff's four class claims for failure to state a claim upon which relief can be granted, and to order that Plaintiff's complaint be amended under Rule 23(d)(1)(D) to remove all class allegations. Plaintiff opposes the motion.[1]

## II. STANDARD

For a motion for judgment on the pleadings under Rule 12(c), a court shall apply the

---

[1] On May 23, 2017, Plaintiff filed a supplemental response, pointing out to the Court that the Eastern District of Arkansas recently certified questions to the Arkansas Supreme Court involving the ADTPA's safe-harbor provision. (ECF No. 44). Plaintiff states that the Arkansas Supreme Court's ruling on those certified questions could be relevant and essential to the Court in determining whether Plaintiff's ADTPA class claim should be dismissed. Thus, Plaintiff asks that the Court withhold its ruling on the instant motion until after the Arkansas Supreme Court answers the certified questions. Defendants construed this as a motion for a stay and filed a supplemental reply opposing the request. (ECF No. 46). However, Plaintiff has not filed a motion requesting that the Court withhold its ruling, and thus the Court enters this Order.

same legal standard as it does for a motion to dismiss under Rule 12(b)(6). *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). A pleading must state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard and to survive a Rule 12(b)(6) motion, a complaint need only state factual allegations sufficient to raise a right to relief above the speculative level that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion, courts are required to accept all of the complaint's well-pled allegations as true and resolve all inferences in the plaintiff's favor. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933 n.4 (8th Cir. 2012). However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or naked assertions which are so indeterminate as to require further factual enhancement. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006).

When considering a motion for judgment on the pleadings, a court must generally ignore all materials outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings." *Id.* (internal quotation marks omitted). Plaintiff and Defendants have attached multiple exhibits to their filings related to the instant motion. These exhibits are either part of

the public record, are materials that are necessarily embraced by the pleadings, or are materials that do not contradict the complaint. Thus, the Court will decide the instant motion under the Rule 12(b)(6) standard.

### III. DISCUSSION

Defendants move pursuant to Rules 8(a)(2) and 12(c) for dismissal of Plaintiff's four class claims, and for the Court to order that Plaintiff's complaint be amended to remove its class allegations. The Court will first address each of Plaintiff's class claims, and then, if necessary, the Court will turn to the issue of whether Plaintiff's complaint must be amended to exclude all class allegations.

**A. Arkansas Deceptive Trade Practices Act**

In count one of her class claims, Plaintiff asserts against all Defendants a claim under the ADTPA. Specifically, Plaintiff alleges that Defendants engaged in deceptive trade practices in violation of the ADTPA by knowingly failing to adequately staff Pinewood. Plaintiff alleges that Defendants held themselves out to the public as being able to meet the needs of Pinewood's residents despite Defendants' knowledge that, due to understaffing, Pinewood could not actually do so.

Defendants argue that Plaintiff's ADTPA claim fails as a matter of law because the ADTPA's safe-harbor provision operates to bar the claim. Plaintiff argues in response that the ADTPA's safe-harbor provision has no applicability in this case, and thus her claim is not barred.

The ADTPA provides in relevant part that, in connection with the sale or advertisement of any goods, services, or charitable solicitation, it is unlawful to: (1) act, use, or employ any deception, fraud, or false pretense; or (2) to conceal, suppress, or omit any material fact with the

intent that others rely on the concealment, suppression, or omission. Ark. Code Ann. § 4-88-108. However, the ADTPA's safe-harbor provision precludes its application to:

> Actions or transactions permitted under laws administered by the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, the Bank Commissioner, or other regulatory body or officer acting under statutory authority of this state or the United States, unless a director of these divisions specifically requests the Attorney General to implement the powers of this chapter.

Ark. Code Ann. § 4-88-101(3).[2] Courts construing safe-harbor provisions do so using one of two interpretations:

> (1) the "specific-conduct" rule, which looks to whether state law permits or prohibits the conduct at issue and only exempts expressly permitted conduct from DTPA claims; and (2) the "general-activity" rule, which looks to whether a state agency regulates the conduct, in which case a regulated actor enjoys full exemption from the state's Deceptive Trade Practice Act.

*Gabriele v. ConAgra Foods, Inc.*, No. 5:14-cv-5183-TLB, 2015 WL 3904386, at *6 (W.D. Ark. June 25, 2015).

The parties' primary point of contention is whether the Court should interpret the ADTPA's safe-harbor provision under the specific-conduct rule or the general-activity rule. Plaintiff argues for the narrower specific-conduct rule, while Defendants argue for the broader general-activity rule. Both parties argue that precedent supports their interpretation.

In 2009, the Arkansas Supreme Court applied the specific-conduct rule, upholding the dismissal of a class-action ADTPA claim. *DePriest v. AstraZeneca Pharm., L.P.*, 2009 Ark. 547, 13-19, 351 S.W.3d 168, 175-78 (2009). The *DePriest* court found that the defendant's

---

[2] The Court notes that on April 7, 2017, an amendment to the ADTPA became law, providing, *inter alia*, that the safe-harbor provision applies to: "Actions or transactions *specifically* permitted . . . ." Act 986, 2017 Gen. Assemb. (Ark. 2017) (amending Ark. Code Ann. § 4-88-101(3)) (emphasis added). However, the Arkansas Supreme Court has stated that unless the legislature "expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively." *Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 296, 9 S.W.3d 520, 526 (2000). Act 986 of 2017 does not contain retroactive language and Plaintiff has not argued that it should be applied retroactively in this case. Therefore, the Court will apply the ADTPA as it existed on February 3, 2016, when this lawsuit was filed.

challenged conduct of labeling and marketing a drug was specifically permitted by the Food and Drug Administration's labeling rules and regulations. *Id.* The *DePriest* court held that the ADTPA's safe-harbor provision applied to bar the plaintiff's ADTPA claim because the challenged conduct was specifically permitted by federal regulations. *Id.*

After *DePriest*, Arkansas federal courts continued to diverge on the issue of whether the ADTPA's safe-harbor provision should be interpreted under the specific-conduct rule or the general-activity rule. Some held that the specific-conduct rule was the correct interpretation of the ADTPA's safe-harbor provision. *See, e.g.*, *Willsey v. Shelter Mut. Ins. Co.*, No. 2:12-cv-2320-RTD, 2013 WL 4453122, at *2-3 (W.D. Ark. Aug. 16, 2013). Meanwhile, others utilized the general-activity rule. *See, e.g.*, *Williams v. State Farm Mut. Auto. Ins. Co.*, No. 5:10-cv-0032-JLH, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010).

In 2014, the Arkansas Supreme Court rendered another opinion dealing with the ADTPA's safe-harbor provision, this time interpreting it using the general-activity rule. *Arloe Designs, LLC v. Ark. Capital Corp.*, 2014 Ark. 21, 6, 431 S.W.3d 277, 281 (2014). The *Arloe* court found that the defendants were subject to the supervision and regulation of state and federal agencies and as a result, their actions were not subject to ADTPA claims unless said agencies request the Attorney General to pursue an ADTPA claim. *Id.* The court noted that no such request had been made, and thus the court affirmed dismissal of the plaintiff's ADTPA claim, reasoning that the safe-harbor provision operated to bar the claim. *Id.*, 431 S.W.3d at 281-82.

Plaintiff contends that *Arloe* cannot be read broadly to abrogate the previous *DePriest* decision because the *Arloe* defendants' challenged conduct also satisfied the specific-conduct rule. Plaintiff argues further that Defendants' reading of *Arloe* is out of step with Arkansas precedent. Defendants argue that *Arloe*, the more recent case on the issue, is indicative that

7

Arkansas now recognizes the general-activity rule. Defendants argue further that Plaintiff's reliance on *DePriest* amounts to a revisionist reading of cases decided pre-*Arloe*.

The Court agrees with Defendants. Although Plaintiff correctly points out that the Arkansas Supreme Court applied the specific-conduct rule in *DePriest*, the high court subsequently applied the general-activity rule in *Arloe*—its most recent word on the issue. The Court is unpersuaded by Plaintiff's argument that *Arloe* cannot be read as a reversal of *DePriest* due to the fact that "the [Arkansas Supreme] Court did not need to painstakingly analyze whether the [*Arloe*] defendants' conduct was permitted, as it was abundantly clear . . . [it] was." (ECF No. 42). Following Plaintiff's logic, it would have been a relatively easy task for the *Arloe* court to conduct a brief safe-harbor analysis under the specific-conduct rule. However, the court did not do so, and instead clearly utilized the general-activity rule in its analysis and affirmed dismissal of the ADTPA claim because the *Arloe* defendants were regulated entities. Thus, it appears that the Arkansas Supreme Court now recognizes the general-activity rule.

Federal district courts are bound by the decisions of the Arkansas Supreme Court when applying Arkansas state law. *David v. Tanksley*, 218 F.3d 928, 930 (8th Cir. 2000). Since *Arloe*, federal courts seem to uniformly interpret the ADTPA's safe-harbor provision under the general-activity rule.[3] *See Tuohey v. Chenal Healthcare, LLC*, 173 F. Supp. 3d 804, 809-10 (E.D. Ark. 2016) (applying Arkansas law);[4] *Ford v. Citimortgage, Inc.*, No. 3:15-cv-0206-DPM, 2015 WL 7429990, at *2 (E.D. Ark. Nov. 20, 2015) (same); *Gabriele*, No. 5:14-cv-5183-TLB, 2015 WL

---

[3] Plaintiff has not cited to a single post-*Arloe* case interpreting the ADTPA's safe-harbor provision under the specific-conduct rule, and the Court is unaware of any.

[4] Defendants argue that *Touhey* is particularly instructive because it featured very similar factual allegations and claims to those in this case. *Touhey* involved plaintiffs alleging that the defendants—various corporate entities and individual administrators—intentionally understaffed the CNAs employed at a nursing home, resulting in its inability to provide basic-care services, which caused the residents to suffer various physical and emotional injuries. 173 F. Supp. 3d at 807-08. The plaintiffs asserted numerous class claims, including an ADTPA claim, breaches of contract based on an admission agreement and provider agreement, and unjust enrichment. *Id.*

3904386, at *6 (same); *King v. Homeward Residential, Inc.*, No. 3:14-cv-0183-BSM, 2014 WL 6485665, at *1 (E.D. Ark. Nov. 18, 2014) (same), *vacated in part on other grounds*, 650 F. App'x 294 (8th Cir. 2016). Plaintiff argues that cases relying on *Arloe* to apply the general-activity rule are wrongfully decided, and invites the Court to apply the specific-conduct rule in this case. However, the Court declines to do so.

"The safe-harbor provision precludes actions pursuant to the ADTPA against regulated entities engaged in regulated conduct." *Touhey*, 173 F. Supp. 3d at 809. Nursing homes are inspected and regulated by the Arkansas Department of Human Services' Office of Long Term Care. *Id.* at 810 (citing Ark. Code Ann. § 20-10-203). Nursing homes are also regulated by the United States Department of Human Services' Center for Medicare and Medicaid Services. *Id.* (citing 42 C.F.R. §§ 483.1-483.80). Thus, Pinewood—a nursing home—is engaged in conduct regulated by a state or federal agency. Plaintiff does not argue that the regulatory entities asked the Attorney General to pursue an ADTPA claim against Defendants. Therefore, the Court finds that the ADTPA's safe-harbor provision applies, and there is no private right of action. Accordingly, Plaintiff fails to state an ADTPA claim as to all Defendants.

**B. Breach of Admission Agreement**

In count two of her class claims, Plaintiff asserts against all Defendants a claim for breach of the admission agreements between Pinewood and its residents. Specifically, Plaintiff states that Pinewood and each of its residents entered into an admission agreement, obligating Pinewood to provide nursing and custodial care, necessary goods, services, and/or treatment in exchange for payment. Plaintiff alleges that the residents, or those acting on their behalf, paid Pinewood, but Defendants breached the agreement by understaffing Pinewood and creating a situation where Pinewood could not, and did not, provide the care and services described in the

admission agreement.

Defendants argue that Plaintiff's claim fails as to all Defendants because Plaintiff has failed to identify any specific provision of the agreement that was allegedly breached. Defendants also argue that Plaintiff failed to allege that any Defendant other than Pinewood is a party to the admission agreement, and thus Plaintiff's claim fails as to those other Defendants. Plaintiff argues in response that she sufficiently alleged the existence of, and breach of, a contract, and that all Defendants can be held responsible for breach of the admission agreement because they collectively operated Pinewood together as one business and as part of a joint enterprise.

A valid breach-of-contract claim under Arkansas law requires the assertion of: (1) the existence of a valid and enforceable contract; (2) an obligation on the part of the defendant, (3) a breach of that obligation; and (4) damages resulting from the breach. *Rabalaias v. Barnett*, 284 Ark. 527, 528-29, 683 S.W.2d 919, 921 (1985). "When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach." *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 21, 389 S.W.3d 77, 93 (2012). Arkansas law presumes that parties contract only for themselves. *Little Rock Wastewater Util. v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 306-07, 902 S.W.2d 760, 763 (1995).

The Court finds that Plaintiff asserted a breach-of-contract claim against Pinewood. Plaintiff alleges that the residents entered into admission agreements with Pinewood, under which Pinewood was obligated to provide nursing and custodial care, necessary goods, services, and/or treatment in exchange for payment. Plaintiff alleges that Pinewood breached this obligation by failing to provide the services promised due to its chronic understaffing. Plaintiff alleges further that this breach caused residents to suffer pain, discomfort, and health problems.

These allegations state a claim for breach of contract against Pinewood based on the admission agreement.

However, the Court finds that Plaintiff has failed to assert a breach of contract claim against the remaining Defendants.  Defendants argue that Pinewood was the only Defendant that was a party to the admission agreement, and thus Plaintiff's breach-of-contract claim fails as to all other Defendants.  Plaintiff argues that she has alleged that all Defendants operated Pinewood as one business or joint enterprise, and thus they all are bound by the admission agreement despite the fact that they are not signatories to it.

Plaintiff is correct that Arkansas law allows a participant in a joint venture to be held liable for the actions of others involved in the joint venture.  *See Nat'l Bank of Commerce (of El Dorado) v. HCA Health Servs. of Midwest, Inc.*, 304 Ark. 55, 59, 800 S.W.2d 694, 697 (1990).  However, this theory of liability is rooted in agency law[5] and operates to hold joint-venture participants vicariously liable for the torts of other participants.  *Id.*  Plaintiff cites to *Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346 (2003), to support application of a joint-venture theory in contract.  However, *Advocat* is distinguishable from this case because the *Advocat* court "considered that the defendants operated as one business in its decision to reduce negligence, medical malpractice, and punitive damages awards and held that the lower court was correct to instruct the jury that one defendant could be liable for the negligence of another defendant."  *Tuohey*, 173 F. Supp. 3d at 811 n.6.

The *Touhey* court rejected an identical argument relying on *Advocat* to support the use of a joint-venture theory to allow the enforcement of a nursing home admission agreement against

---

[5] Although an agent may bind its principal to a contract in certain circumstances, Plaintiff does not allege that Pinewood was acting as an agent for the other Defendants when it entered into the admission agreements with residents.  *See Tuohey*, 173 F. Supp. 3d at 811 n.4 (citing *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 1008, 69 S.W.3d 414, 421 (2002)).

11

non-parties to the agreement. *Id.* Plaintiff argues that *Touhey* was wrongfully decided, but the Court is not persuaded. Like in *Touhey*, the nursing home—Pinewood in this case—is the only Defendant to enter into the admission agreements with the residents. *See Smith v. Heather Manor Care Ctr., Inc.*, 2012 Ark. App. 584, 424 S.W.3d 368, 377 (holding that a nursing-home resident did not have a cause of action for breach of contract against certain defendants because those defendants did not have contracts directly with the resident). Accordingly, Plaintiff fails to state a claim for breach of contract based on the admission agreement as to the remaining Defendants.

**C. Breach of Provider Agreement**

In count three of her class claims, Plaintiff asserts against all Defendants a claim for breach of a provider agreement between Pinewood and the Arkansas Office of Long Term Care. Specifically, Plaintiff states that Defendants entered into provider agreements with state and federal governments in which Pinewood is reimbursed for services provided to Medicare or Medicaid recipients. The provider agreement attached to the complaint is an agreement by Pinewood to participate in the Arkansas Nursing Home Program, administered by the Office of Long Term Care. (ECF No. 4). The provider agreement obligates Pinewood to comply with all nursing-home rules issued by the United States Department of Health and Human Services. Plaintiff alleges that Defendants breached this agreement by understaffing Pinewood and creating a situation where Pinewood could not, and did not, provide residents with care and services consistent with federal and state statutes and regulations. Plaintiff alleges that, by becoming a resident of Pinewood, "the residents, many of whom were Medicare and/or Medicaid recipients, became third-party beneficiaries of the . . . provider agreement." (ECF No. 4).

Defendants argue that the *Touhey* court found that an identically worded provider

agreement was not a contract at all, and thus this Court should find there is no viable breach-of-contract claim based on the provider agreement against any Defendant in this case. Defendants also argue in the alternative that Plaintiff's claim fails as to all Defendants except Pinewood because the only parties to the provider agreement are Pinewood and the Office of Long Term Care. Thus, Defendants conclude that the Pinewood residents are not parties to the agreement, and Plaintiff cannot enforce its terms.

Plaintiff argues in response that some jurisdictions have found that provider agreements are contracts, and that the provider agreement in this case satisfies all elements of a valid contract under Arkansas law. Plaintiff also argues that the provider agreement states that "the rights and privileges of the residents are of primary concern to the parties," and thus Pinewood's residents are intended third-party beneficiaries of the agreement and have standing to enforce its terms. (ECF No. 42). Plaintiff argues further that all Defendants can be held liable for breach of the provider agreement despite the fact that they are not signatories because they collectively operated Pinewood together as one business and as part of a joint enterprise.

As discussed above, the first element of a breach-of-contract claim under Arkansas law requires the existence of an enforceable contract. *Rabalaias*, 284 Ark. at 528-29, 683 S.W.2d at 921. The question of "[w]hether a provider agreement is a contract subject to common law contract principles generally arises when a provider seeks to dispute a decision made or a requirement implemented by the Secretary of the Department of Health and Human Services." *Tuohey*, 173 F. Supp. 3d at 811. The Eastern District of Arkansas has observed that "[t]he weight of authority supports a finding that [a] provider agreement is not a contract." *Se. Ark. Hospice, Inc. v. Sebelius*, 1 F. Supp. 3d 915, 926 (E.D. Ark. 2014). Indeed, a number of courts have held that Medicare provider agreements provide a statutory entitlement rather than a

13

contractual right. *See PAMC, Ltd. v. Sebelius*, 747 F.3d 1214, 1221 (9th Cir. 2014); *Mem'l Hosp. v. Heckler*, 706 F.2d 1130, 1136 (11th Cir. 1983); *Tuohey*, 173 F. Supp. 3d at 812; *Se. Ark. Hospice, Inc.*, 1 F. Supp. 3d at 926; *United States v. Villaspring Health Care Ctr., Inc.*, No. CIV.A. 3:11-43-DCR, 2011 WL 6337455, at *8 (E.D. Ky. Dec. 19, 2011); *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007); *Greater Dallas Home Care Alliance v. United States*, 10 F. Supp. 2d 638, 647 (N.D. Tex. 1998).

The Court agrees with the observations and reasoning of the Eastern District of Arkansas. When Pinewood became a party to the provider agreement and joined the Medicare reimbursement program, "[it] received a statutory entitlement, not a contractual right." *Touhey*, 173 F. Supp. 3d at 812. This statutory entitlement was contingent on Pinewood's compliance with certain obligations listed in the provider agreement, and Pinewood's failure to meet those obligations could result in sanctions or the termination of the reimbursement payments. (ECF No. 4). However, failure to fulfill the responsibilities under the agreement cannot result in a breach-of-contract claim because there is no enforceable contract between Pinewood and the government. *Touhey*, 173 F. Supp. 3d at 812. Accordingly, Plaintiff fails to state a claim for breach of contract based on the provider agreement as to all Defendants.

### D. Unjust Enrichment

In count four of her class claims, Plaintiff asserts against all Defendants a claim for unjust enrichment. Specifically, Plaintiff argues that the admission agreement between Pinewood and each of its residents requires that the residents make payments in exchange for Pinewood providing care and services. Plaintiff argues that because Defendants intentionally understaffed Pinewood, it was unable to provide residents with the requisite care and services. Thus, Plaintiff alleges that Defendants were unjustly enriched by receiving payments for care and services that

they could not, and did not, provide.

Defendants argue that this claim should be dismissed as to all Defendants for failure to state a claim upon which relief may be granted. Plaintiff argues in response that she has properly alleged a claim for unjust enrichment, and therefore her claim should not be dismissed.

Unjust enrichment is an equitable doctrine based on the notion that a person should not become unjustly enriched at the expense of another and should be required to make restitution for the unjust enrichment received. *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 21, 381 S.W.3d 21, 36. Generally, unjust enrichment does not apply when an express contract exists. *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005). Additionally, the existence of an express contract typically prohibits an unjust enrichment claim against a defendant who is not a party to the express contract. *See id.* (affirming the dismissal of an unjust enrichment claim against a non-party to an express contract because "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter").

However, the "mere fact that there is a contract between the parties does not prevent the grant of restitution in an appropriate case." *Friends of Children, Inc. v. Marcus*, 46 Ark. App. 57, 61, 876 S.W.2d 603, 605 (1994). Appropriate cases include those in which there has been a rescission at law, there has been a contract discharged by impossibility or frustration of purpose, or there has been a fundamental mistake about something important in the contract. *Id.* Another appropriate instance to allow an unjust enrichment claim despite the existence of an express contract is when the contract does not fully address a subject. *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, 9, 373 S.W.3d 318, 324 (2009); *see also Klein v. Arkoma Prod.*

*Co.*, 73 F.3d 779, 786 (8th Cir. 1996) (construing Arkansas law).

Defendants argue that the *Touhey* court faced very similar facts and ultimately dismissed the unjust enrichment claim in that case. Defendants urge the Court to follow *Touhey*'s model and dismiss Plaintiff's unjust enrichment claim in this case as to all Defendants. Indeed, the *Touhey* plaintiffs sought to assert an unjust enrichment claim against the defendants, even though the plaintiffs also asserted a breach-of-admission-agreement claim against the same defendants and argued that the agreement was a valid contract. *Tuohey*, 173 F. Supp. 3d at 813. The *Touhey* plaintiffs argued that a nursing home admission agreement did not fully address the subject of understaffing, and thus the existence of the agreement did not bar their unjust enrichment claim. *Id.* The *Touhey* court rejected this argument, stating that although the admission agreement did not explicitly state the number of CNAs the nursing home was required to have on duty, it did obligate the nursing home to provide nursing and custodial care, meals, services, and treatment in exchange for payment. *Id.* at 814. The court found that the admission agreement fully covered the subject of resident care, due to the fact that staffing levels directly affect the quality, consistency, and frequency of care the residents would receive. *Id.* at 814-15. Thus, the *Touhey* court held that the payments the nursing home received were damages arising from its alleged breach of the admission agreement, and that no exception applied in that case to circumvent the general rule that unjust enrichment cannot be brought where there is an express contract. *Id.* at 815 (citing *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1201 (8th Cir. 2015)). Therefore, the court dismissed the plaintiff's unjust enrichment claim as to all defendants. *Id.*

In this case, Plaintiff argues that she should be allowed to plead an unjust enrichment claim against Defendants, despite her also asserting a breach-of-admission-agreement claim against the same Defendants. This case's facts differ slightly from *Touhey* in that Plaintiff does

not argue that the admission agreement fails to fully address the subject of understaffing, and thus the express contract did not bar her unjust enrichment claim. Instead, Plaintiff argues only that she has properly alleged a claim for unjust enrichment, and thus the Court should not dismiss her claim.

The Court is unpersuaded by Plaintiff's argument. As the *Touhey* court discussed, the general rule in Arkansas is that unjust enrichment does not apply when an express contract exists. *Servewell*, 362 Ark. at 612, 210 S.W.3d at 112. There are several exceptions to this rule, but Plaintiff does not argue that any of these exceptions apply in this case. Even assuming *arguendo* that Plaintiff did make such an argument, the Court finds that none of the exceptions apply. There is no indication that there has been a rescission at law, that the contract was discharged by impossibility or frustration of purpose, or that there has been a fundamental mistake about something important in the contract. Moreover, although the admission agreement in this case does not specifically state a minimum number of CNAs that Pinewood must have on duty at one time, it does require that Pinewood administer medical, nursing, and personal care to the residents in exchange for payment. Pinewood's staffing levels directly impact the quality, consistency, and frequency of the care that the residents receive. *See Tuohey*, 173 F. Supp. 3d at 814-15. Thus, the Court finds that the admission agreement fully addresses the subject of resident care, including staffing levels. As a result, no exceptions apply to allow Plaintiff to assert an unjust enrichment claim in concert with her breach of contract claim. Accordingly, Plaintiff fails to state a claim for unjust enrichment against all Defendants.

### E. Amendment under Rule 23(d)(1)(D)

Defendant requests the Court to order that Plaintiff's complaint be amended under Rule 23(d)(1)(D) to remove all class allegations. Plaintiff does not directly respond to this request.

17

As discussed above, some of Plaintiff's class claims remain in this action. For this reason, the Court will not require Plaintiff to amend her complaint and remove all class allegations.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion for Judgment on the Pleadings as to Class Claims (ECF No. 32) is hereby **GRANTED IN PART AND DENIED IN PART**. Count two of Plaintiff's class claims states a claim for breach of contract based on the admission agreement and shall remain as to Defendant Pinewood Health and Rehabilitation, LLC. As to the remaining Defendants, count two fails to state a claim and is hereby **DISMISSED WITHOUT PREJUDICE**. Counts one, three, and four of Plaintiff's class claims fail to state a claim and are hereby **DISMISSED WITHOUT PREJUDICE** as to all Defendants. Plaintiff's individual claims of negligence and medical malpractice also remain.

**IT IS SO ORDERED**, this 16th day of August, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge